**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

TAMMY GUINAN, MAGGIE FLINT,
JILL McCALEB and KEITH CLARK,
Individually, and on Behalf of Others
Similarly Situated,

        Plaintiffs,

vs.

BOEHRINGER INGELHEIM
VETMEDICA, INC., a Delaware
Corporation,

        Defendant.

No. C10-3007-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING PLAINTIFFS'
MOTION TO STRIKE AND
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

———————————

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*II. WHAT RECORD CAN BE CONSIDERED?* . . . . . . . . . . . . . . . . . . . . 7
   *A. Standards For Motion To Strike* . . . . . . . . . . . . . . . . . . . . . . . . . 7
   *B. Plaintiffs' Motion To Strike* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*III. MOTION FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . . . . . . . . 12
   *A. Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . 12
   *B. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
       *1.*    *Overview of the IWPCL* . . . . . . . . . . . . . . . . . . . . . . . . 15
       *2.*    *FLSA § 203(o)'s exclusion of time* . . . . . . . . . . . . . . . . 17
           *a.*    *Burden of proof* . . . . . . . . . . . . . . . . . . . . . . . . 18
           *b.*    *Changing Clothes* . . . . . . . . . . . . . . . . . . . . . . 20
           *c.*    *Custom or practice* . . . . . . . . . . . . . . . . . . . . . 28

*IV. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Plaintiffs have brought claims on behalf of hourly employees at defendant's Fort Dodge Health Production Facilities in Fort Dodge, Iowa. Plaintiffs claim that defendant's failure to compensate donning and doffing time violates the Iowa Wage Payment and Collections Law, IOWA CODE § 91A.1 *et seq*. Defendant moved for summary judgment on a number of affirmative defenses, requiring me to decide, *inter alia*, whether donning and doffing workers' personal protective equipment is "changing clothes" under the Fair Labor Standards Act, 29 U.S.C. § 203(o), the statute plaintiffs rely upon to establish a violation of the Iowa Wage Payment and Collections Law.

## *I. INTRODUCTION AND BACKGROUND*

### *A. Factual Background*

The summary judgment record reveals the following facts are undisputed. Plaintiffs Tammy Guinan, Maggie Flint, Jill McCaleb and Keith Clark are current or former hourly, non-exempt production employees of defendant Boehringer Ingelheim Vetmedica, Inc. ("BIVI") at its Fort Dodge Health Production Facilities ("FD") in Fort Dodge, Iowa. FD is owned and operated by BIVI.

FD manufactures and packages pharmaceutical and biological products for livestock and pets. At its Riverside facility, FD manufactures pharmaceutical products and does packaging. At its Fifth Street facility, FD manufactures vaccines and conducts research and development.

The United Food and Commercial Workers Union Local 6 ("UFCW") has represented workers at FD since at least 1995. Plaintiffs worked pursuant to collective bargaining agreements ("CBAs") between the UFCW and FD. The current CBA runs from September 1, 2007 to September 1, 2013. The previous CBA ran from September 1, 2001 to September 1, 2007. The CBA prior to that ran from July 27, 1995 to September 1, 2001.

Most FD maintenance and production employees are required to wear the following personal protective equipment ("PPE") at all times: safety glasses with side shields, face shields, safety goggles, hair nets, beard covers, standard work scrubs or uniforms, coveralls, booties, and steel-toed boots or other specified footwear. Other PPE worn by FD maintenance and production employees is put on or taken off after the employees enter their specific work areas on paid time. This PPE includes: hard hats, welding helmets, hearing protection, respirators, dust and/or surgical masks, lab coats, flame-resistant uniforms, disposable undergarments, chemical resistant aprons, retrieval harnesses, welding aprons or jackets, chemical resistant gloves, thermal resistant gloves, cut resistant gloves, rubber overboots, booties, disposable socks, Tyvek chemical/bacterial resistant overalls and self-contained breathing apparatuses.

Plaintiffs clock-in prior to the beginning of their shifts. They then walk to their lockers, doff their non-work clothes, don their required work attire, and then don PPE. Plaintiffs then walk to their assigned area. Plaintiffs are required to be in their production or other assigned area wearing their PPE at the beginning of their shifts. Plaintiffs are

permitted to stop working five minutes prior to the end of their shifts, return the PPE, clean up, walk to their lockers and change into their non-work clothes before clocking out. Plaintiffs are paid for this time.

FD has not paid plaintiffs for any pre-shift donning activities. Since at least September 2, 2001, FD has permitted plaintiffs to leave their posts five minutes early for post-shift doffing ("The five minute gowning/clean-up period"). During that time, FD has paid plaintiffs to the end of their shifts. The five minute gowning/clean-up period is provided for in both the 2001 and 2007 CBAs. Those CBAs contain the following provision:

> 18.3 A five (5) minute gowning/clean-up period will be permitted at the end of each assigned daily work schedule. It is understood that no employee is considered to be released from daily assignment until the end of the daily work schedule, and are expected to not clock out until the end of each daily assignment. In addition, it is expected that each employee will have clocked in prior to or at the start of each scheduled daily assignment and at their respective work area, ready to commence their duties at the start of their daily work assignment. The time clock at or closest to the assigned work area shall be the time of record. For the purpose of the attendance policy, a five (5) minute period will be allowed before an employee receives an incident. *Note this is not intended to happen on a regular basis.

Exhibit 1, Article 18.3 at 32; Exhibit 2, Article 18.3 at 24. In addition, the 2007 CBA contains the following provision:

> 18.4 Said rest periods and periods of gowning/clean-up are without reduction in pay. And gowning/clean-up period are only applicable to those employees who are required to wear assigned gowns and/or uniforms. For employees who have gowning requirements, a reasonable amount of time for

> gowning and travel will be allowed, as established by the department.

Exhibit 1, Article 18.4 at 32.

The CBAs between the UFCW and FD contained a grievance and arbitration procedure. The grievance history maintained by FD shows no grievance or arbitration over any pre-shift or post-shift donning or doffing activities by plaintiffs since at least 1998. The UFCW has been aware of FD's practice and custom of non-payment for pre-shift donning activities since at least 1995. At no time since 1995 has the UFCW proposed pay for pre-shift donning activities in any negotiations with FD. In negotiations, the UFCW proposed and FD agreed to the five minute gowning/clean-up period.

## B. Procedural Background

On August 9, 2010, plaintiffs filed an Amended Complaint raising claims for unpaid wages for donning and doffing activities under the Iowa Wage Payment and Collections Law ("IWPCL"), IOWA CODE § 91A.1 *et seq.*[1] Specifically, they seek relief for BIVI's failure to pay them for their time spent donning and doffing PPE and walking to and from their workstations before and after their shifts and during their unpaid breaks. On August 23, 2010, BIVI filed its Amended Answer to the Amended Complaint denying these allegations and asserting twenty-eight affirmative defenses. BIVI has moved for summary judgment on five of its affirmative defenses, its second, nineteenth, twentieth, twenty-first and twenty-second defenses. In its second affirmative defense, BIVI asserts, "Plaintiffs' claims are barred to the extent that Plaintiffs have failed to plead a *prima facie* case arising under the Iowa Wage Payment Collection Act, Iowa Code Sections 91A, *et seq*. Amended

---

[1]Plaintiffs assert subject matter jurisdiction over their IWPCL claims based on diversity of citizenship. *See* 28 U.S.C. § 1332(d) (diversity jurisdiction for class actions).

Ans. at 7. BIVI's nineteenth affirmative defense states: "Time spent donning and doffing standard safety equipment is not compensable under the Iowa Wage Payment Collection Act." Amended Ans. at 10. For its twentieth affirmative defense, BIVI asserts: "The alleged activities of waiting, donning, doffing and walking are not compensable under the Iowa Wage Payment Collection Act." Amended Ans. at 10. BIVI's twenty-first affirmative defense states:

> Plaintiffs' claims, and those claims of any other person on whose behalf Plaintiffs seek to assert a claim under the Iowa Wage Payment Collection Act, for pre- or post-shift clothes changing and washing time are barred in that they do not meet the definition of hours worked under any state or federal applicable law.

Amended Ans. at 10. BIVI asserts as its twenty-second affirmative defense that: "Plaintiffs' claims, and those claims of any other person on whose behalf Plaintiffs seek to assert a claim under the Iowa Wage Payment Collection Act, are preempted by federal law." Amended Ans. at 10.

On March 15, 2011, plaintiffs filed their resistance to BIVI's Motion For Summary Judgment. Also on March 15, 2011, plaintiffs filed a Motion to Strike Portion of Declarations Of Amy Heide-Fischer. In their motion, plaintiffs seek to strike three declarations of Heide-Fischer submitted by BIVI on the ground that her declarations do not reflect she has sufficient personal knowledge to support her statements since she has only been employed by BIVI or its predecessor since 2000. On March 31, 2011, BIVI resisted plaintiffs' Motion to Strike. In its resistance, BIVI contends Heide-Fischer's review of company records provides an adequate basis for the admissibility of the statements contained in Heide-Fischer's declaration. BIVI argues plaintiffs' objection to Heide-Fischer's testimony goes to the weight of such testimony and not its admissibility. On

April 5, 2011, plaintiffs filed a timely reply brief in support of Motion to Strike and on April 14, 2011, BIVI filed a timely relief brief in support of its Motion for Summary Judgment.

## II. WHAT RECORD CAN BE CONSIDERED?

Before I can consider the merits of BIVI's Motion For Summary Judgment, I must first consider plaintiff's Motion to Strike. This motion goes to what record I can consider in resolving BIVI's Motion For Summary Judgment.

### A. Standards For Motion To Strike

Rule 12 of the Federal Rules of Civil Procedure provides for a motion to strike, as follows:

> (f) Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>> (1) on its own; or
>> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

FED. R. CIV. P. 12(f).[2]

In ruling on a Rule 12(f) motion, the court "enjoy[s] liberal discretion," and its ruling is reviewed only for abuse of that discretion. *See BJC Health Sys. v. Columbia*

---

[2] The language of Rule 12(f) was "restyled" by the 2007 Amendments, but, again, the changes were intended to be stylistic only. Fed.R.Civ.P. 12, advisory committee's note.

*Cas. Co.*, 478 F.3d 908, 917 (8th Cir.2007); *Nationwide Ins. Co. v. Central Missouri Elec. Coop., Inc.*, 278 F.3d 742, 748 (8th Cir.2001); *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir.2000); *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 863–64 n. 3 (8th Cir.1997).  The rule embodies this discretion, because it is cast in permissive terms ("the court may act …") rather than mandatory terms.  Fed. R. Civ. P. 12(f); *see also Stanbury*, 221 F.3d at 1063 ("Because the rule is stated in the permissive, however, it has always been understood that the district court enjoys 'liberal discretion' thereunder.").  The Eighth Circuit Court of Appeals has also recognized that, "[d]espite this broad discretion … striking a party's pleadings is an extreme measure, and, as a result, we have previously held that '[m]otions to strike under Fed.R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted.'"  *Stanbury*, 221 F.3d at 1063 (quoting *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir.1977), in turn citing 5 Wright & Miller, Federal Practice and Procedure: Civil § 1380 at 783 (1969)); *accord BJC Health Sys.*, 478 F.3d at 917 (citing *Stanbury*).  Applying these standards, the Eighth Circuit Court of Appeals has ruled that even matters that are not "strictly relevant" to the principal claim at issue should not necessarily be stricken, if they provide "important context and background" to claims asserted or are relevant to some object of the pleader's suit.  *Id.*

### B.  Plaintiffs' Motion To Strike

Plaintiffs seek to strike the following three paragraphs of Heide-Fischer's declaration:

> Since at least 1995, the UFCW has been aware of Defendant and its predecessors' custom and practice of non-payment for pre-shift donning and doffing activities.

> Since at least 1995, neither Defendant, its predecessors, nor the UFCW have ever proposed paying for pre-shift donning and walking time during negotiations.
>
> The UFCW has proposed during negotiations, and Defendant's predecessor agreed to, pay all employees five (5) minutes of 'plug time' and to provide for an additional reasonable amount of paid time for employees to doff their PPE and clean up.

*See* Plaintiffs' Mot. at 2. Plaintiffs argue Heide-Fischer lacks sufficient personal knowledge to support her statements since she has only been employed by BIVI or its predecessor since 2000. In response, BIVI contends Heide-Fischer's review of company records provides an adequate basis for the admissibility of Heide-Fischer's statements in her declaration. BIVI argues plaintiffs' objection to Heide-Fischer's testimony goes to the weight of such testimony and not its admissibility. Plaintiffs counter that they do not argue that "personal knowledge" can never be gained from review of records, but instead that Heide-Fischer's statement fails because it does not describe what records she reviewed and therefore it cannot be ascertained whether these records satisfy the hearsay exception for records kept in the ordinary course of business.[3]

---

[3]Heide-Fischer's entire declaration reads as follows:

1.

I am over the age of twenty-one (21) years and competent to testify in the matters contained herein. This Declaration is based upon my personal knowledge.

2.

I am currently employed by Defendant as Fort Dodge Human Resources and Labor Relations Manager. I have held this position since 2004. From 2001-2003, I was employed by

(continued...)

³ (...continued)

Wyeth Pharmaceuticals ("Wyeth") as Human Resources Generalist in Fort Dodge, Iowa. From 2000-2001, I was employed by Wyeth as Staffing Coordinator.

3.

Defendant and its predecessors that owned and operated the facilities in Fort Dodge, Iowa manufacture and package pharmaceutical and biological products for livestock and pets. At the Riverside facility, Defendant and its predecessors manufacture pharmaceutical products and perform packaging functions. At the Fifth Street facility, Defendant and its predecessors manufacture vaccines and conduct research and development activities.

4.

Since at least 1995, the UFCW has been aware of Defendant and its predecessors' custom and practice of non-payment for pre-shifting donning and doffing activities. In order to determine whether the UFCW ever proposed pay for pre-shift donning activities in any negotiations with FD prior to 20001, I reviewed all of the notes and documentation in the Company's possession regarding the 1995 negotiations. I found no documentation that referred in any way to pre-shift donning activities or payment for the same.

5.

Since at least 1995, neither Defendant, its predecessors, nor the UFCW have ever proposed paying for pre-shift donning and walking time during negotiations.

6.

The UFCW has proposed during negotiations, and Defendants's predecessor agreed to, pay all employees five (5)

(continued...)

10

Federal Rule of Civil Procedure 56 requires that affidavits supporting or opposing a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).[4] As I previously observed:

> "In evaluating evidence related to possible summary judgment, a court may not consider affidavits that do not satisfy the requirements of Fed. R. Civ. P. 56(e)." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1317 (8th Cir. 1996). In short, inadmissible material is not "properly available to defeat or support the [summary judgment] motion." *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993); *accord Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996) ("[I]n evaluating the evidence at the summary judgment stage, we consider only those responses that are supported by admissible evidence."). Moreover, "[a]ffidavits asserting personal knowledge must include enough

---

[3] (...continued)

> minutes of "plug time" and to provide for an additional reasonable amount of paid time for employees to doff their PPE and clean up.

> 7.
>
> I declare pursuant to 29 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct and based on my personal knowledge.

Heide-Fischer Decl. at ¶¶ 1-7 (docket no. 43-11).

[4] On December 1, 2010, amendments to the Rules became effective, including Rule 56. "As part of the amendments, Rule 56(e)(1) was renumbered as Rule 56(c)(4) and the language of the rule was slightly modified, but no pertinent substantive changes were made to the rule." *Sperry v. Werholtz*, 413 Fed. App'x 31, 33 n.2 (10th Cir. 2011).

> factual support to show that the affiant possesses that knowledge." *El Deeb v. University of Minn.*, 60 F.3d 423, 428 (8th Cir. 1995). An affirmation on "information and belief is insufficient." *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1367 (8th Cir. 1983).

*Helm Fin. Corp. v. Iowa N. Ry. Co.*, 214 F. Supp.2d 934, 953 (N.D. Iowa 2002).

An affiant's conclusions based on personal observations over time may constitute personal knowledge, and an affiant may testify as to the contents of records she reviewed in her official capacity. *See State v. Saint Francis Hospital,* 94 F. Supp.2d 423, 425 (S.D.N.Y. 2000). The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge. *Id.*

Heide-Fischer states in her affidavit that she is BIVI's Fort Dodge Human Resources and Labor Relations Manager. She states that, in preparing her affidavit, she reviewed "all of the notes and documentation in the Company's possession regarding the 1995 negotiations", and so had direct personal knowledge of the facts and circumstances set out in those documents. Heide-Fischer's position with BIVI qualified her to review the relevant business materials in an official capacity and make sworn statements based upon those materials. I conclude Heide-Fischer had personal knowledge of the facts in her affidavit. *See Bazan v. Cordova*, 242 Fed. App'x 491, 493 (10th Cir. 2007) (holding that affidavit based on affiant's personal review of military records was admissible evidence for court to consider on summary judgment). Thus, plaintiffs' Motion to Strike is denied.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standards

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477

U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).

As the Eighth Circuit Court of Appeals has explained,

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009) quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U. S. 574, 586-87 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at 587.

*Torgerson v. City of Rochester*, ___ F.3d ___, ___, 2011 WL 2135636, at *7 (June 1, 2011) (*en banc*).

I will apply these standards to BIVI's Motion for Summary Judgment.

## B. Analysis

### 1. Overview of the IWPCL

Because plaintiffs' claims are all based on the IWPCL, a brief overview of that statute and its differences with the Fair Labor Standards Act, ("FSLA") is necessary. As I recognized before:

> The IWPCL is a "remedial statute," and "meant to facilitate the public policy of allowing employees to collect wages owed to them by their employers." *Hornby v. State*, 559 N.W.2d 23, 26 (Iowa 1997). Section 91A.3 gives employees the right to receive their wages. It states, "An employer shall pay all wages due its employees. . . ." Iowa Code § 91A.3. The IWPCL also gives employees the right to receive their "wages due" in "at least monthly, semimonthly, or biweekly installments on regular paydays," *id.*, and provides suspended or terminated employees with the right to receive their "wages earned" by "the next regular payday," *id.* § 91A.4. The FLSA, of course, provides similar rights, like the rights to a minimum wage and overtime pay. 29 U.S.C. §§ 206, 207. A big difference between the FLSA and IWPCL is that the IWPCL is more concerned with when or how wages are paid. *See Runyon v. Kubota Tractor Corp.*, 653 N.W.2d 582, 585 (Iowa 2002) ("We have observed that the purpose of chapter 91A is to 'facilitate collection of wages by employees.'" (quoting *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 593 (Iowa 1993))). Nevertheless, both statutes require employers to pay certain wages to their employees. *See Stahl v. Big Lots Stores, Inc.*, No. 06-CV-1026-LRR, 2007 WL 3376707, at *5 (N.D. Iowa Nov. 7, 2007) ("The

purpose of the FLSA and the IWPCL is to 'facilitate the collection of wages owed to employees.'" (quoting *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 201 (Iowa 1997))). While the FLSA prescribes exactly what kind of wages must be paid, *see* 29 U.S.C. §§ 206, 207, the IWPCL simply requires that an employer "pay all wages due its employees," Iowa Code § 91A.3. Thus, the FLSA may be used to establish an employee's right to a certain amount of wages under the IWPCL and an employer's violation of the IWPCL for not paying "all wages due its employees." *Id.*

*Bouaphakeo v. Tyson Foods*, 564 F. Supp.2d 870, 883 (N.D. Iowa 2008).

Plaintiffs' Amended Complaint alleges that BIVI is obligated to pay all wages to its employees under the IWPCL, but never states what law or right—other than those rights conferred by the FLSA—plaintiffs rely on to establish the wages they seek. In addition, plaintiffs do not assert their right to wages due under the IWPCL is conferred by anything other than the FLSA.[5] Thus, in this case, plaintiffs obviously rely on the FLSA to establish a violation under the IWPCL for BIVI's failure to "pay all wages due its employees." IOWA CODE § 91A.3.

---

[5] As I have previously recognized,

A violation of the IWPCL, however, is not always dependent upon establishing a violation of the FLSA. The specific amount of "wages due" to employees under the IWPCL must be provided by something other than the IWPCL. And as a general matter, that amount does not have to be provided by the FLSA. The wages due under the IWPCL could be based on any number of legal bases, such as an employment agreement or Iowa's minimum wage law.

*Bouaphakeo*, 564 F. Supp.2d at 884 n.9.

## 2.    *FLSA § 203(o)'s exclusion of time*

Under the FLSA, employers must pay their employees overtime wages at "a rate not less than one and one-half times the regular rate at which [they are] employed" for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1); *see Specht v. City of Sioux Falls*, 639 F.3d 814, 820 (8th Cir. 2011); *Chao v. Barbeque Ventures, L.L.C.*, 547 F.3d 938, 942 (8th Cir. 2008); *see also Allen v. McWane, Inc.*, 593 F.3d 449, 453 (5th Cir. 2010); *Turner v. City of Philadelphia*, 262 F.3d 222, 224 (3d Cir. 2001). However, § 203(o) excludes changing clothes from the measured working time under § 207 if it has been excluded by the terms of or by the custom or practice under a bona fide CBA:

> Hours Worked.-In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee

29 U.S.C. § 203(o).[6]  As the Fourth Circuit Court of Appeals explained:

> Section 203(o) applies to donning and doffing of protective gear at the beginning and end of each day if two conditions are met. First, these activities must constitute "changing clothes" within the meaning of the statute. Second, time spent on these activities must be excluded from the workday by the express

_____

[6]Even when changing clothes and washing are integral to an employee's principal activities and would otherwise be compensable, the parties to a collective bargaining agreement may opt out of payment for such activities. *See Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 213 (4th Cir. 2009).

> terms of or the customs and practices under a bona fide
> collective bargaining agreement.

*See Sepuleveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 214 (4th Cir. 2009).

BIVI seeks summary judgment on plaintiffs' pre-and post-shift donning and doffing activities on the grounds that such time is excluded by § 203(o) from "hours worked." BIVI argues that plaintiffs' donning and doffing of PPE constitutes changing clothes and that payment for that time was excluded by the terms of, or the custom or practice under a bona fide CBA. In response, plaintiffs contend that § 203(o) does not apply because their doffing and donning of the PPE items are not "changing clothes" within the meaning of § 203(o).

### a.    Burden of proof

The parties disagree as to who bears the burden of proving that the time spent donning and doffing the PPE items is excluded under § 203(o). Plaintiffs argue that § 203 (o) is an exemption that should be strictly construed in their favor and that BIVI bears the burden of proving that the time is excluded. BIVI disagrees and contends that § 203(o) is not an exemption, but rather an exclusion of time spent changing clothes from the definition of hours worked by either the "express terms" of or by the "custom and practice" under a bona fide CBA.

The FLSA contains a provision entitled "Exemptions." *See* 29 U.S.C. § 213. The § 213 exemptions are considered affirmative defenses and the defendant bears the burden of proving entitlement to them. *See Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392-94 (1960); *Franklin v. Kellogg Co.*, 619 F.3d 604, 611 (6th Cir. 2010). Section 203(o)'s "changing clothes" provision, however, is not listed under § 213's exemptions, but under the definitions found in § 203. In support of its position, plaintiffs point to the decisions of the Ninth Circuit Court of Appeals and some federal district courts which have agreed

with plaintiffs' position and treated § 203(o) as an affirmative defense like those set forth in § 213. *See Alvarez v. IBP, Inc.,* 339 F.3d 894, 905 (9th Cir. 2003) (interpreting § 203(o) as an exemption that should be construed narrowly against the employer), *aff'd on other grounds,* 546 U.S. 21 (2005); *In re Cargill Meat Solutions Wage & Hour Litig.,* 632 F. Supp. 2d 368, 384 (M.D. Pa. 2008) ("[F]or purposes of statutory interpretation, an exception contained in § 203 should not be treated differently from an exemption contained in § 213."); *Kassa v. Kerry, Inc.,* 487 F. Supp. 2d 1063, 1072-76 (D. Minn. 2007) (explaining that "[w]here a motion for summary judgment is founded on an affirmative defense, the moving party has the burden to present facts that establish that defense," and stating that the defendant had the burden to prove the time fell within § 203(o)). However, all other federal circuit courts of appeals that have addressed this issue have concluded that § 203(o) is not an affirmative defense and that the plaintiff bears the burden to prove that the time should not be excluded under § 203(o). *See Salazar v. Butterball, L.L.C.,* --- F.3d---, 2011 WL 2619305, at * 5 (10th Cir. July 5, 2011); *Franklin,* 619 F.3d at 612; *Allen,* 593 F.3d at 458-59; *Anderson v. Cagle's, Inc.,* 488 F.3d 945, 955-59 (11th Cir. 2007); *Turner,* 262 F.3d at 226-27; *cf. Adams v. United States,* 471 F.3d 1321, 1325-26 (Fed. Cir. 2006) (concluding that exclusions under the Portal-to-Portal Act that are similar to § 203(o) are not FLSA exemptions and therefore the burden of proof is on the plaintiffs).

I find the reasoning of the majority of federal circuit courts of appeals for interpreting § 203(o) as an exclusion from the definition of work persuasive and, thereby place the burden on the plaintiffs. First, § 203 simply provides a list of definitions, one of which, subsection (o), excludes in some instances "changing clothes" from the definition of hours worked. This stands in sharp contrast to the specific exemptions identified in § 213. *See Salazar,* ---F.3d---, 2011 WL 2619305, at * 5; *Franklin,* 619 F.3d

at 612; *Allen,* 593 F.3d at 458. In addition, although the Supreme Court has referred to "exemptions" under the FLSA as affirmative defenses, those "exemptions" "all 'relate[ ] to the total exclusion of a particular worker or workers from certain FLSA provisions[,]' not 'to the exclusion of only some *activities* from the FLSA.'" *Allen,* 593 F.3d at 458 (quoting *Adams,* 471 F.3d at 1325-26); *see Franklin*, 619 F.3d at 612 (same); *see also Salazar*, ---F.3d---, 2011 WL 2619305, at * 5. As the Eleventh Circuit in *Anderson* explained, "[h]ad Congress sought to bestow upon § 203(o) the same status as the exemptions set forth in § 213, it easily could have amended § 213 instead of § 203, which is titled, not coincidentally, 'Definitions.'" *Anderson*, 488 F.3d at 957. For these reasons, the Fifth Circuit Court of Appeals concluded in *Allen* that § 203(o) does not create an affirmative defense and that the burden remains on the plaintiff to establish entitlement to wages under the FLSA, including proving there is no term or custom or practice under a bona fide CBA related to "changing clothes." *Allen,* 593 F.3d at 457. I agree with the reasoning and conclusions reached by the five federal circuit courts of appeals in finding that § 203(o) is not an exemption but rather a definitional exclusion. Accordingly, plaintiffs have the burden of showing that the time for the doffing and donning activities at issue do not come within § 203(o).

> **b.** **Changing Clothes**

Plaintiffs contend that § 203(o) does not apply, in part, because the doffing and donning of the PPE here does not come within § 203(o)'s "changing clothes" provision. They do not contest that their doffing and donning of the PPE constitutes "changing," but rather, contend that the PPE does not constitute "clothes." BIVI argues the PPE does qualify as "clothes."

In support of its position, plaintiffs rely on a June 16, 2010, United States Department of Labor ("DOL") opinion letter finding that "clothes" under § 203(o) do not

include "protective equipment worn by employees that is required by law, by the employer, or due to the nature of the job." Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, 2010 WL 2468195 ("2010 Opinion Letter"). This was not the DOL's first interpretation of § 203(o). Prior to its 2010 Opinion Letter, the DOL had addressed § 203(o) in four opinion letters. In 1997, it considered whether "the following preliminary and postliminary activities: sharpening knives, waiting in line at wash stations, cleaning equipment, and putting on and taking off required safety gear" fell within § 203 (o). Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, 1997 WL 998048 ("1997 Opinion Letter"). The DOL concluded that because "section 3(o) provides an exemption from the broad, remedial provisions of the FLSA, it must be read narrowly," and that "by its very terms section 3(o) does not apply to the putting on, taking off, and washing of protective safety equipment, and, therefore, time spent on these otherwise compensable activities cannot be excluded from hours worked." *Id.* The DOL further explained that "[t]he plain meaning of 'clothes' in section 3(o) does not encompass protective safety equipment," because "common usage dictates that 'clothes' refer to apparel, not to protective safety equipment which is generally worn over such apparel and may be cumbersome in nature." *Id.* The DOL later repeated this position in a 2001 opinion letter. *See* Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, 2001 WL 58864 (Jan. 15, 2001) ("2001 Opinion Letter").

In 2002, the DOL reversed its stance on the meaning of "clothes" under § 203(o) in another opinion letter. Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, 2002 WL 33941766 (June 6, 2002) ("2002 Opinion Letter"). In its 2002 Opinion Letter, the DOL explained:

> It is our view, based upon a reexamination of the statute and legislative history, that the 'changing clothes' referred to in

section 3(o) applies to the putting on and taking off of the protective safety equipment typically worn in the meat packing industry.

*Id.* Retreating from the position held in its 1997 Opinion Letter, the DOL explained:

> the 1997 opinion letter confined its reasoning to a single sentence where it explained that "clothes" has a "plain meaning" which excludes (i) "protective" articles that (ii) may be "cumbersome in nature" and (iii) are "worn over . . . apparel." Upon review, we have concluded that none of these qualities should prohibit a company and union from regarding the gear worn in the meat packing industry as clothes for purposes of section 3(o).
>
> The Department of Labor has described articles worn for protective purposes as clothing, and so has a leading dictionary. See 29 C.F.R. § 1910.1050 App. A (OSHA regulations characterizing "face shields" as a kind of "protective clothing"); Webster's New World Dictionary (2d college ed. 1982) ("clothes" are "articles, usually of cloth, designed to cover, protect or adorn the body . . ."). The Supreme Court has used the phrase "protective clothing" on more than one occasion. See, e.g., Industrial Union Department, AFL-CIO v. American Petroleum Institute, 448 U.S. 607, 660-61 (1980) (the "Benzene" case) (plurality) (stating that compliance with an OSHA requirement "could be achieved simply by the use of protective clothing, such as impermeable gloves"); United States v. Stanley, 483 U.S. 669, 671, 690 (1987) (referring to clothing to protect from chemical exposure and radiation). Congress, in enacting the Portal Act, and the Supreme Court, in interpreting it in Steiner, recognized that the purpose of clothing specially worn for the workplace might well be protection. Indeed, it was in part precisely because the clothing at issue served protective purposes that, in the legislative debates and Steiner, Congress and the Court indicated that donning and doffing the clothing at issue was "integral" to the job and, accordingly, compensable.

That an article may be "cumbersome" also is no indication that it is not clothing. Many items of clothing are cumbersome. In the case of clothing worn for protective purposes in particular, it often will be more protective if it is larger, heavier, and therefore more cumbersome than street clothes. It would disserve the workers the Fair Labor Standards Act is meant to protect if employers who wished to introduce bulkier and more protective gear in the workplace knew that in doing so they would lose their ability to bargain with their union over the compensability of donning and doffing protective gear. Such an intent should not be attributed to Congress in interpreting 3(o). In addition to lacking basis in the statutory text and legislative intent, a distinction between apparel that is "cumbersome" and that which is not is vague, difficult to administer, and fails to provide useful guidance to employers and unions regarding the legitimate parameters of their agreements and practices.

Finally, that an item is worn on top of another item plainly is no reason to believe they are not both items of clothing.

*Id.*

Thus, the DOL "interpret[ed] 'clothes' under section 3(o) to include items worn on the body for covering, protection, or sanitation, but not to include tools or other implements such as knives, scabbards, or meat hooks." *Id.* The DOL repeated this interpretation in a 2007 Opinion Letter. Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, 2007 WL 2066454, at *1 (May 14, 2007) ("2007 Opinion Letter"). The DOL explained; "it remains our view, based upon the statute and its legislative history, that the 'changing clothes' referred to in section 3(o) applies to putting on and taking off the protective safety equipment typically worn by employees in the meat packing industry." *Id.* The DOL went on to note; "[a]s specified in the 2002 letter, this clothing

includes, among other items, heavy protective safety equipment worn in the meat packing industry such as mesh aprons, sleeves and gloves, plastic belly guards, arm guards, and shin guards." *Id.*

In its 2010 Opinion Letter, the DOL reverted back to the position held in its 1997 and 2001 Opinion Letters. The DOL noted that "dictionary definitions offer little useful guidance" in interpreting the meaning of the word "clothes," because "[s]uch definitions are, by design, a collection of a word's various meanings depending on the context in which it is used." Wage & Hour Div., U.S. Dep't of Labor, Opinion Letter, 2010 WL 2468195. Because § 203(o) describes "clothes" in the context of the "workday," the DOL looked to the legislative history surrounding § 203(o) for guidance, observing:

> The "clothes" that Congress had in mind in 1949 when it narrowed the scope of § 203(o)-those "clothes" that workers in the bakery industry change into and "took off" in the 1940s-hardly resembles the modern-day protective equipment commonly donned and doffed by workers in today's meat packing industry, and other industries where protective equipment is required by law, the employer, or the nature of the job.

*Id.* Thus, the DOL concluded that "the § 203(o) exemption does not extend to protective equipment worn by employees that is required by law, by the employer, or due to the nature of the job." *Id.*

The United States Supreme Court has instructed that although not controlling, administrative rulings, interpretations, and opinions may be entitled to some deference by reviewing courts. *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944). "The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power

to control." *Id.* Plaintiffs argue that I should follow the reasoning of the DOL's 2010 Opinion Letter while BIVI contends the DOL's 2010 Opinion Letter is not entitled to deference because the 2002 and 2007 Opinion Letters are inconsistent with it. Confronted by a similar argument in *Franklin*, the Sixth Circuit Court of Appeals squarely declined to give deference to the DOL's 2010 Opinion Letter, concluding:

> First, "[a]n agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view." *INS v. Cardoza-Fonseca,* 480 U.S. 421, 446 n. 30, 107 S. Ct. 1207, 94 L. Ed. 2d 434 (1987). The DOL's position on this issue has changed repeatedly in the last twelve years, indicating that we should not defer to its interpretation. Additionally, we find its interpretation to be inconsistent with the language of the statute.

*Id.* I, too, decline to give deference to the DOL's 2010 Opinion Letter. Because the DOL has repeatedly altered its interpretation of § 203(o), the persuasive power of its interpretation is greatly diminished. *See id.*; *Salazar v. Butterball, L.L.C.*, ---F.3d---, 2011 WL 2619305, at * 4 (10th Cir. July 5, 2011) ("Where, as here, an agency repeatedly alters its interpretation of a statute, the persuasive power of those interpretations is diminished."); *Pacheo v. Whiting Farms, Inc.*, 365 F.3d 1199, 1205 n.3 (10th Cir. 2004) ("An agency interpretation that conflicts with the agency's earlier interpretation is . . . entitled to considerably less deference than a consistently held position.").

More important, even if I were to give some deference to the DOL's current position, it runs counter to all but one federal circuit court of appeals to consider the issue. The Fourth, Fifth, Sixth, Seventh, Tenth, and Eleventh Circuits have all held that donning and doffing PPE is changing clothes within § 203(o). *Salazar*, ---F.3d---, 2011 WL 2619305, at * 4 (slaughterhouse workers' frocks, aprons, plastic sleeves, boots, hard hats,

ear plugs, safety glasses, mesh gloves, knife holders, and arm guards); *Spoerle v. Kraft Foods Global, Inc.,* 614 F.3d 427, 428 (7th Cir. 2010) (slaughterhouse workers' boots, hard hats, smocks, and hair nets), *cert. denied,* 131 S. Ct. 933 (2011); *Franklin,* 619 F.3d at 614–15 (frozen food workers' uniforms and PPE, including hair nets, safety glasses, ear plugs, and hard hats); *Sepulveda,* 591 F.3d 209, 215–18 (4th Cir. 2009) (poultry workers' PPE), *cert. denied,* 131 S. Ct. 187 (2010); *Anderson v. Cagle's, Inc.,* 488 F.3d 945, 955–56 (11th Cir. 2007) (same); *Bejil v. Ethicon, Inc.,* 269 F.3d 477, 480 n.3 (5th Cir. 2001) (lab coats, hair covers, and shoe covers).   As the Sixth Circuit Court of Appeals explained:

> "[I]n all cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary meaning of the words used." *Am. Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S. Ct. 1534, 71 L. Ed. 2d 748 (1982). "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enters.,* 489 U.S. 235, 242, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S. Ct. 3245, 73 L. Ed. 2d 973 (1982)). "A leading dictionary defines 'clothes' as 'clothing,' which itself is defined as 'covering for the human body or garments in general:  all the garments and accessories worn by a person at one time.'" *See Sepulveda v. Allen Family Foods, Inc.,* 591 F.3d 209, 214-15 (4th Cir. 2009) (quoting Webster's Third New International Dictionary 428 (unabridged) (1986)); *see also Anderson,* 488 F.3d at 955.

> Thus, the plain meaning of the word "clothes" is quite
> expansive. However, because the statute indicates that §
> 203(o) applies to changing into clothes worn during the
> workday, Congress was referring to clothes worn for the
> workday and not simply "ordinary" clothes. *See Sepulveda,*
> 591 F.3d at 215. Accordingly, there is no reason to limit the
> definition of clothes to uniforms, which are made up of pants
> and shirts, as Franklin suggests. Instead, "clothes" within the
> meaning of § 203(o) refers to any "covering for the human
> body or garments in general," particularly those worn for
> work. *Id.* (internal quotation marks omitted).

*Franklin,* 619 F.3d at 614–15. The only federal circuit court of appeals to a reach a different conclusion is the Ninth Circuit Court of Appeals in *Alvarez v. IBP, Inc.,* 339 F.3d 894, 904–05 (9th Cir. 2003), *aff'd in part on other grounds, reversed in part on other grounds, and remanded,* 546 U.S. 21 (2005). There, the Ninth Circuit Court of Appeals held slaughterhouse workers' PPE were not clothes under § 203(o). *Id.; see Gonzalez v. Farmington Foods, Inc.,* 296 F. Supp. 2d 912, 916, 930-31 (N.D. Ill. 2003)(relying on *Alvarez* and finding "a helmet, a frock, a plastic apron, an arm guard, a belly guard, a plastic arm sleeve, a variety of gloves . . ., a hook, a knife holder, a chida . . ., and knives" were not "clothes" under section 203(o)).

I agree with the conclusion reached by the majority of federal circuit courts of appeals that "clothes" under § 203(o) includes PPE. Such "[a]n expansive construction is consistent with the ordinary meaning of the word 'clothes,' and makes more sense than a construction that would differentiate between apparel and equipment designed for safety purposes and other apparel and equipment, or between non-unique and unique apparel and equipment." *Salazar,* ---F.3d---, 2011 WL 2619305, at * 5.

### c. *Custom or practice*

The next issue is whether there was a custom or practice under FD's CBA of excluding time spent changing clothes. I have little trouble concluding that a custom or practice of non-payment, other than the five minute gowning/clean-up period, for donning and doffing time existed at FD. It is undisputed that both the 2001 and 2007 CBAs contained the following provision:

> 18.3 A five (5) minute gowning/clean-up period will be permitted at the end of each assigned daily work schedule. It is understood that no employee is considered to be released from daily assignment until the end of the daily work schedule, and are expected to not clock out until the end of each daily assignment. In addition, it is expected that each employee will have clocked in prior to or at the start of each scheduled daily assignment and at their respective work area, ready to commence their duties at the start of their daily work assignment. The time clock at or closest to the assigned work area shall be the time of record. For the purpose of the attendance policy, a five (5) minute period will be allowed before an employee receives an incident. *Note this is not intended to happen on a regular basis.

Exhibit 1, Article 18.3 at 32 (docket no. 43-5); Exhibit 2, Article 18.3 at 24 (docket no. 43-7). It is further uncontested that the 2007 CBA contains the following additional provision:

> 18.4 Said rest periods and periods of gowning/clean-up are without reduction in pay. And gowning/clean-up period are only applicable to those employees who are required to wear assigned gowns and/or uniforms. For employees who have gowning requirements, a reasonable amount of time for gowning and travel will be allowed, as established by the department.

Exhibit 1, Article 18.4 at 32.

The CBAs between the UFCW and FD contained a grievance and arbitration procedure. The grievance history maintained by FD shows no grievance or arbitration over any pre-shift or post-shift donning or doffing activities by plaintiffs since at least 1998. The UFCW has been aware of FD's practice and custom of non-payment for pre-shift donning activities since at least 1995. At no time since 1995 has the UFCW proposed pay for pre-shift donning activities in any negotiations with FD. BIVI's practice of non-payment, other than the five minute gowning/clean-up period, for donning and doffing time occurred regularly and frequently, every pay period, such that employees could reasonably expect it to continue. *See Sunoco, Inc.* 349 N.L.R.B. 240, 244 (2007) ("A past practice must occur with such regularity and frequency that employees could reasonably expect the 'practice' to continue or reoccur on a regular and consistent basis."). Under these circumstances, I find that there was a custom or practice of non-payment, other than the five minute gowning/clean-up period, for donning and doffing time within the meaning of Section 203(o). Thus, I conclude that donning and doffing the PPE at issue in this case is "changing clothes" and that there was a custom or practice of not compensating that time at FD, other than the five minute gowning/clean-up period. Thus, donning and doffing time is not "hours worked" pursuant to 29 U.S.C. § 203(o) and BIVI did not violate the IWPCL by failing to compensate plaintiffs for donning and doffing time. Accordingly, BIVI's Motion For Summary Judgment is granted. Having granted summary judgment on this ground, I need not decide BIVI's other asserted grounds for summary judgment.

## IV. CONCLUSION

Having found that BIVI did not violate the IWPCL by failing to compensate plaintiffs for donning and doffing time because that time does not constitute "hours worked" under § 203(o), BIVI's Motion for Summary Judgment (docket no. 43) is

**granted**.  For the reasons discussed above, plaintiffs' Motion to Strike (docket no. 46) is **denied.**  Judgment shall enter accordingly.

      **IT IS SO ORDERED.**

      **DATED** this 25th day of July, 2011.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA